Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6149 | **DATE** | 12/13/2001 |
| **CASE TITLE** | Richardson vs. Anthony Principi | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. The VA's motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | DEC 1 4 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 34 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| JD | courtroom deputy's initials | 01 DEC 13 PM 12:00 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
DEC 1 4 2001

DELPHINE RICHARDSON,   )
                       )
       Plaintiff,      )
                       )
       v.              )   No. 99 C 6149
                       )
ANTHONY PRINCIPI[1], Secretary,  )   Judge George M. Marovich
Department of Veterans Affairs,  )
                       )
       Defendant.      )

MEMORANDUM OPINION AND ORDER

Plaintiff Delphine Richardson ("Richardson") filed this action against Anthony Principi[1], Secretary of the Department of Veterans Affairs ("VA") alleging employment discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 at seq; the Rehabilitation Act, as amended 29 U.S.C. § 791 at seq; and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e at seq, as amended by the Civil Rights Act of 1991. The VA now moves for summary judgment. For the reasons set forth below, the VA's motion is granted.

---

[1] This action was originally filed against then Secretary of Veterans Affairs, Togo D. West. Anthony Principi, the current Secretary of Veterans Affairs, has been automatically substituted as the Defendant in this matter. Federal Rule of Civil Procedure 25(d).

1



## BACKGROUND

Unless otherwise noted, the following facts are undisputed. From 1989 through September 1996, Richardson, an African-American was employed as a staff nurse with the VA West Side Medical Center. Richardson, who was 53-years-old in September 1996, worked the 3:00 p.m. to 11:00 p.m. shift in the psychiatric ward. On October 29, 1995, Richardson broke her foot. Richardson called the Nurse Manager on duty to inform her of her injury. Richardson also visited Dr. Mark Cavalenes ("Cavalenes") who diagnosed her with a non-displaced fracture. Cavalenes did not cast the foot or give Richardson medication, rather he recommended progressive ambulation. Four days later, Richardson again met with Cavalenes. At that time, she reported minimal pain and Cavalenes again recommended ambulation. Three weeks later, Richardson returned for a third appointment with Cavalenes and reported that the pain was much better.

During this sick leave, Richardson had numerous telephone conversations with her immediate supervisor Nurse Manager Patricia Hayes ("Hayes"). In these conversations they discussed her progress and when she would be returning to work. On, December 4, 1995, Hayes sent Richardson a letter explaining that the VA required a statement confirming her sick leave dates. The letter further informed Richardson that due to staffing needs, her position needed to be filled. On December 15, 1995,

Richardson's fracture had healed and Cavalenes continued to recommend ambulation. Cavalenes also gave Richardson a return to work verification for January 8, 1996 without restriction. Richardson called Hayes and informed her that January 8th would be her return date.

On January 8, 1996, Richardson returned to the psychiatric unit for work. At that time, Hayes met with Richardson and explained that pursuant to Hayes's December 4th letter, Richardson was no longer on the psychiatric ward roster. Hayes informed Richardson that Associate Chief Nurse Barbara Little ("Little") had stated that Richardson should follow a wandering patient in another ward. Richardson called Little and requested a written schedule. Little informed her that there was no written schedule yet for Richardson, but that she would likely be working nights that week and days the following week. Little stated that a written schedule would be completed by the following day. This information confused Richardson, so she left and went home. The following day, Richardson picked up her written schedule from Little and was informed that she was charged with being away from work without leave ("AWOL") for leaving the previous day. She was subsequently reprimanded for this absence.

Richardson's written schedule assigned her to work the evening shift during the week of January 8th and the day shift for the following week. Richardson asked Little if she could

3

start at 9:00 a.m. during the week she was assigned to the day shift, rather than 7:00 a.m., the typical start time for the day shift. Little granted this request.

As of January 28, 1996, Richardson was assigned to the evening shift in the medical-surgical unit. This transfer was executed through Chief Nurse Paula Steward's ("Steward") authority to assign nurses to any area according to need. No nurse was guaranteed permanent assignment in any given area. When she was transferred to the medical-surgical unit, Richardson was informed that she would have to undergo three weeks of orientation to the new department. During this orientation Richardson would have to be scheduled for the day shift because this was the only time when the Education Service was able to train nurses. Once her orientation to the new department was complete, Richardson was to be permanently assigned to the evening shift. Richardson asked Barnes if she could begin her day shift at 9:00 a.m., rather than the standard 7:00 a.m. Barnes agreed to this schedule adjustment. Unhappy about her reassignment, Richardson filed a formal EEO complaint alleging that the VA had discriminated against her on the basis of race, age and disability. After an investigation, an EEO officer made a finding of no discrimination and the VA eventually issued a final agency decision of no discrimination.

On February 2, 1996, Richardson began her orientation with an assessment by Joyce Gibbs ("Gibbs"), the Nursing Instructor.

That day Richardson also attended a training class. Over the course of the next week Richardson attended two more training classes and underwent clinical training on the unit. However, Richardson never completed her orientation because she failed to report to work on February 12, 1996. Four days later, Richardson went to see Cavalenes to complain of pain and swelling in her foot. Cavalenes found her range of motion to be normal and recommended strengthening activity and therapy. He also gave her a verification requiring her to be out of work from February 12 through March 30, 1996 and further noting that Richardson had been unable to work from February 12th. Richardson faxed this statement with a written request for advance sick leave covering the dates February 12 through March 30. Richardson was then placed on the schedule to return to work following March 30, 1996. Richardson did not return to work. Instead, she spoke to Barnes on March 30 and followed up with a fax on April 1st stating that because she was not assigned back to the psychiatric unit her foot had become swollen and painful due to the excessive walking and lifting required in her new position. She further stated that she had an appointment with Cavalenes on April 26 and would be able to update her return to work date at that time.

On April 15, Barnes issued a warning letter to Richardson informing her that she was being marked AWOL for failing to report for duty on April 1, 1996 and because she had failed to submit further documentation regarding her absence. On April 26,

5

Richardson saw Cavalenes and explained that she had not returned to work because she did not feel able to do her job. Cavalenes noted no negative clinical finding, only Richardson's own claim of pain. Cavalenes gave her another work verification noting that she "[s]tates he/she has been ill and unable to return to work from 03/30 thru 5/26/96." Cavalenes chose these words because it was Richardson who was restricting herself, not him. This was the last time Richardson saw Cavalenes. She had an appointment for May 24th which she did not attend.

On May 23rd, Steward proposed to discharge Richardson for failing to report for work since April 1st. On May 28th, Richardson reported to work and Gibbs provided her with a four week training program. On June 6th, Richardson submitted a written response to the proposed discharge. The Employee Relations Specialists reviewed Richardson's case and her response and recommended she be discharged, noting that she had been absent for two months and that Cavalenes's verification was insufficient because it only reported what Richardson had told Cavalenes and did not certify that in Cavalenes's opinion Richardson was unable to work. The Chief of Staff also recommended that Richardson be discharged. Richardson was out of work again from August 15th through the 29th. Because she was out of sick leave and because she failed to request any other type of leave, the VA marked her AWOL for this period as well. During this time, Richardson filed another formal EEO Complaint alleging

6

the VA discriminated against her on the basis of her age by failing to grant her leave, fostering a hostile work environment and refusing to train her. Again the EEO officer recommended a no discrimination finding. This recommendation was adopted by the VA in a final agency decision. On September 6, 1996, the VA Director issued a decision discharging Richardson for her AWOL status from April 1 through May 23, 1996. As a result, Richardson filed an EEO Complaint claiming that her discharge was impermissibly based on race, age and disability. Again, the EEO investigator recommended a no discrimination finding, and again, the VA made such a finding in its final agency decision.

## DISCUSSION

### I. Standards for Summary Judgment

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The record "and all reasonable inferences drawn from it [are to be viewed] in the light most favorable to the party opposing the motion." Bisciglia v. Kenosha Unified Sch. Dist. No. 1, 45 F.3d 223, 226 (7th Cir. 1995).

### II. Rehabilitation Act Claim

Richardson claims that the VA discriminated against her in violation of the Rehabilitation Act. To sustain an employment discrimination claim under the Rehabilitation Act, the employee must show that: 1) she is "disabled" within the meaning of the

7

Act; 2) she is otherwise qualified for the position held; 3) she is excluded from the position solely because of her disability; and 4) her position exists as part of a program or activity receiving federal financial assistance. Knapp v. Northwestern Univ., 101 F.3d 473, 478 (7th Cir. 1996)(citation omitted). An individual has a disability within the meaning of the Rehabilitation Act if she: 1) has a physical or mental impairment which substantially limits one or more of her major life activities; 2) has a record of having such an impairment; or 3) is regarded as having such an impairment. 29 U.S.C. § 706(8)(B). When analyzing an employment discrimination claim brought under the Rehabilitation Act, the Court uses the standards developed under the Americans with Disabilities Act. 29 U.S.C. § 794(d). "Intermittent, episodic impairments are not disabilities, the standard example being a broken leg." Vande Zande v. State of Wis. Dep't of Admin, 44 F.3d 481, 484 (7th Cir. 1999). Richardson asserts that her fractured foot is a disability for the purposes of her discrimination claim, but provides no legal support for this assertion. A fractured foot is the classic example of an episodic impairment which does not constitute a disability under the Rehabilitation Act claim. Thus, her Rehabilitation Act claim cannot survive.

III. Age and Race Discrimination Claims

Richardson additionally asserts that the VA discriminated against her due to her race in violation of Title VII and due to

her age in violation of the ADEA. Under Title VII, it is unlawful for an employer to discharge any individual or to otherwise discriminate against any individual, on the basis of race, with respect to her compensation, terms, conditions, or privileges of employment. See 42 U.S.C. § 2000e2(a)(1). Likewise, the ADEA prohibits an employer from similarly discriminating against individuals who are 40 or more years of age. 29 U.S.C. §§ 621(b), 631(a). Since both Title VII and the ADEA discrimination claims are analyzed in the same manner, see Robinson v. PPG Indus., Inc., 23 F.3d 1159, 1162 (7th Cir. 1994)(citations omitted), and since the evidence offered to support both of these claims is essentially the same, the Court will address them together.

Under Title VII, there are two methods of proof for demonstrating alleged discrimination: (1) direct proof of discriminatory intent; or (2) indirect proof, or the burden-shifting method described in McDonnel Douglas Corp. v. Green, 411 U.S. 792 (1973). See Oates v. Discovery Zone, 116 F.3d 1161, 1169-70 (7th Cir. 1997). Here, Richardson solely attempts to prove discrimination through the indirect burden-shifting method. The mechanics of proving discrimination pursuant to the indirect burden-shifting analysis are well-settled:

> If the plaintiff establishes a prima facie case, there is a rebuttable presumption of discrimination and the employer must offer

> a legitimate, nondiscriminatory or non-
> retaliatory reasons for the adverse
> employment action. If the employer gives a
> legitimate, nondiscriminatory reason for
> the adverse employment action, the
> plaintiff must prove this reason is mere
> pretext for discrimination.

Payne v. Milwaukee County, 146 F.3d 430, 433 (7th Cir. 1998).

Courts need not, however, labor through the entire burden-shifting exercise in every case. Instead, "[w]hen the defendant has proffered an explanation for termination that the court determines to be non-pretextual, the court may avoid deciding whether the plaintiff has met his prima facie case and instead decide to dismiss the claim because there is no showing of pretext." Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir.1998). The Court finds that this is such a case and, therefore, will turn directly to the pretext analysis.

Here, the VA asserts that the reason it transferred Richardson to the medical surgical unit from the psychiatric unit was because she "had been absent from work an extended period of time which required the VA to fill her position in psychiatry." (VA's Memo. of Law in Support of its Mot. to Dismiss at 14) Richardson does not dispute the fact that she had been absent from work for a long period and she further admits that Steward had the authority to transfer any nurse according to the VA's

10

staffing needs and that no nurse was guaranteed a particular assignment. The VA further asserts that the reason that Richardson was not fully trained was because she stopped reporting for work before her orientation program (which was underway) could be completed. Richardson does not dispute the fact that the orientation had begun, nor that she was then absent for an extended period of time. The VA states that its reason for marking her AWOL in August of 1996 was because she had used up all of her sick leave and had not requested additional sick leave. Again, Richardson does not dispute the fact that she was out of sick leave, nor that she failed to ask for another type of leave. Finally the VA states that its reason for firing Richardson was that she was AWOL for more than two months. Richardson does not dispute that she was absent for this period, nor that her doctor's verification only stated that she stated she was ill and unable to work, not that he was restricting her from work. These reasons easily carry the VA's "burden of producing 'evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" Sample v. Aldi, Inc., 61 F.3d 544, 547 (7th Cir. 1995) (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993)).

Because the VA has offered a legitimate, nondiscriminatory reason for terminating Richardson, the burden shifts to Richardson to present evidence that the reason offered by the VA

11

was pretextual. See Perdomo v. Browner, 67 F.3d 140, 144-45 (7th Cir. 1995) (defining pretext as "a lie, specifically a phony reason for some action"). Importantly, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." Hicks, 509 U.S. at 515; see also McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 797 (7th Cir. 1997) ("Once an employer makes this showing [of legitimate, non- discriminatory reason for the adverse employment action], the burden then shifts back to the employee to show that the employer's proffered reasons are pretextual and that its actual reason was discriminatory or retaliatory.").

Here, stated directly, there is not one speck of evidence, even circumstantial, that race or age discrimination was the real reason Richardson was terminated. Rather, Richardson has completely failed to address the issue of pretext, much less provide any citation to the record to support such a claim. The Court does not bear the responsibility for scouring the record for evidence to support a plaintiff's claims. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994). Thus, Richardson's race and age discrimination claims cannot survive.

IV. Retaliation Claim

Under the retaliation provision of Title VII, it is unlawful for "a labor organization to discriminate against any member thereof ... because he has made a charge, testified, assisted, or

12

participated in any manner in an investigation proceeding, or hearing under this subchapter." 42 U.S.C. § 2003e3. A plaintiff may raise an issue of fact supporting discriminatory retaliation with either direct evidence or by creating an inference of discrimination using the indirect burden-shifting method. McDonnell Douglas Corp., 411 U.S. 792; see Essex v. United Parcel Serv., Inc., 111 F.3d 1304, 1308 (7th Cir. 1997). Richardson again employs the burden-shifting method to establish her retaliation claim. Richardson relies on the same evidence as she relied on for her discrimination claims to support her claim that her firing was the result of her complaints regarding the VA's allegedly discriminatory behavior. However, as discussed above, Richardson has failed to establish that her firing was pretextual. See supra III. Thus, Richardson's retaliation claim, like her discrimination claims, must fail.

## CONCLUSION

For the foregoing reasons, the VA's motion for summary judgment is granted.

ENTER:

/s/ George M. Marovich
GEORGE M. MAROVICH
UNITED STATES DISTRICT JUDGE

DATED: December 11, 2001